# Exhibit B
## Settlement Agreement & Release

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement is entered into between Plaintiff Erik Akerman ("Plaintiff," "Named Plaintiff," or "Class Representative"), individually and on behalf of a certain class of individuals (the "Class," "Settlement Class," or "Class Members," as defined below), and Defendant Ithaca College ("Ithaca" or "Defendant"). Plaintiff, Class Members, and Defendant are referred to individually as "Party" and collectively as the "Parties."

## RECITALS AND BACKGROUND

A.    On December 12, 2023, Plaintiff Erik Akerman commenced a putative class action in U.S. District Court, Northern District of New York, Case No. 3:23-cv-1565, alleging breach of implied contract and unjust enrichment claims as a result of Defendant's transition from in-person instruction and other curricular and extra-curricular services to a virtual learning environment during a portion of the Spring 2020 semester due to the COVID-19 pandemic and related state and local public health mandates and orders (the "Action").

B.    Defendant vigorously contested each and every claim in the Action and denies all material allegations of the Action and would continue to assert numerous defenses if this matter proceeded further.

C.    On April 19, 2024, Defendant answered Plaintiff's complaint in the Action.

D.    The Parties then engaged in discovery, serving requests and exchanging written responses for interrogatories, admissions, and thousands of pages of documents. As a result, the Parties were in a position to engage in meaningful settlement discussions.

E.    Plaintiff and Defendant participated in a private mediation session on October 4, 2024, before the Hon. Suzanne H. Segal (Ret.). During the session, the Parties ultimately came to a resolution by agreement to a Term Sheet.

F.    The Settlement was reached as a result of extensive arms-length negotiations between the Parties and counsel. Before and during these settlement discussions and mediation, the Parties had arms-length exchange of sufficient information to permit Plaintiff and Class Counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

G.    On October 11, 2024, the Parties advised the Court that they had settled the Action.

H.    Defendant, without admitting any wrongdoing or liability, has agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to, the Action.

I.    Class Counsel has conducted a thorough investigation into the facts of this Action, including an review of relevant documents, and has diligently pursued an investigation of the claims of the Class against Defendant. Based on its own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement with Defendant for the consideration and on

the terms set forth herein is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, and the impact of this Agreement on Named Plaintiff and the Settlement Class. Based upon their analysis and evaluation of a number of factors, Named Plaintiff and Class Counsel recognize the risks of litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years.

J.      Class Counsel and Named Plaintiff, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement of the Action and the prompt provision of effective relief to the Class are in the best interests of the Class Members.

K.      NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action.

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1.    **Action** means Erik Akerman, on behalf of the certified classes, v. Ithaca College, Case No. 3:23-cv-1565-TJM/TWD, Northern District of New York.

1.2.    **Acceptance Period** means the thirty (30) day period beginning from the date of the mailing and/or e-mailing of the Notice and Election Form, during which a Class Member can submit an Election Form as to the method they would prefer to receive a settlement payment.

1.3.    **Agreement** means this Settlement Agreement and Release.

1.4.    **Attorneys' Fees and Costs** means such funds as may be awarded by the Court consistent with the terms of this Agreement to Class Counsel for their past, present, and future work, efforts, and expenditures in connection with this Action and settlement, including fees, costs, and expenses of any co-counsel, local counsel, experts, consultants, or other individuals retained by, or who assisted Class Counsel in connection with this Action and settlement.

1.5.    **Class Counsel** means Michael A. Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C., One Old Country Road, Suite 347, Carle Place, New York 11514 and Nicholas A. Colella of Lynch Carpenter, LLP, 1133 Penn Avenue, 5th Floor, Pittsburgh, Pennsylvania, 15222.

1.6.    **Class Lists** means lists in electronic format, preferably Excel, that includes, for each respective Class Member, name, last known address, last known e-mail address, last known telephone number, along with tuition and fee payment totals, the amount of Defendant-backed or Ithaca-backed scholarships/grants received, and other information related to the calculations and distribution of settlement proceeds as set forth below. The Class Lists shall be provided and maintained in a confidential fashion.

1.7.    **Costs and Fees** means Class Counsel's attorneys' fees, costs, and expenses; costs and fees associated with the Settlement Claims Administrator; and Service Award to be paid to Named Plaintiff in accordance herewith.

1.8.    **Court** means United States District Court for the Northern District of New York.

1.9.    **Days** means business days if the specified number is ten (10) days or fewer, and calendar days if the specified number is greater than ten (10) days.

1.10.   **Defendant** means Ithaca College.

1.11.   **Defendant's Counsel** means Robert J. Burns and Qian (Sheila) Shen of Holland & Knight LLP, 787 Seventh Ave., Suite 3100, New York, New York 10019; Jeffrey J. Nolan and Paul G. Lannon of Holland & Knight LLP, 10 St. James Ave., 11th Floor, Boston, MA 02116; and Lindsay E. Catt and Kathryn J. Richards of Holland & Knight LLP, 400 S. Hope Street, 8th Floor, Los Angeles, CA 90071.

1.12.   **Election Form** means the form, a copy of which is attached to the Notice of Settlement of Class Action Lawsuit, or as otherwise approved by the Court, that Class Members may return to designate which method for receiving the funds would be preferred, including physical check, Venmo, PayPal, or other reasonable available options. In the absence of a Class Member returning an Election Form, the Settlement Claims Administrator shall mail a physical check.

1.13.   **Final Approval** means issuance of an Order: granting final approval of this Agreement as binding upon the Parties; holding this Agreement to be final, fair, reasonable, adequate, and binding on all Class Members who have not excluded themselves as provided below; ordering that the settlement relief be provided as set forth in this Agreement; ordering the releases as set forth in this Agreement; entering judgment in this case; and retaining continuing jurisdiction over the interpretation, implementation, and enforcement of the settlement.

1.14.   **Final Approval Order** means an Order entered by the Court granting Final Approval.

1.15.   **Final Effective Date** means (i) if no appeal is timely filed, thirty (30) days after the Court has entered a Final Approval Order, or (ii) if an appeal is timely filed, the latest of the following, if applicable: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; or (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical to the form of the Final Approval Order entered by the Court.

1.16.   **Gross Settlement Fund** means One Million Five Hundred Thousand Dollars ($1,500,000.00).

**1.17.** **Named Plaintiff** means Erik Akerman.

**1.18.** **Net Settlement Fund** means the Gross Settlement Fund minus Court-approved Costs and Fees.

**1.19.** **Notice(s)** means the Court-approved form of notice to Class Members to advise them of the terms of this settlement, their rights, their availability options, and remedies.

**1.20.** **Notice Response Deadline** means (i) thirty (30) days from the date of the initial mailing and/or e-mailing of the Notice or as otherwise set by the Court, and (ii) an additional fifteen (15) days later for any Class Members who were unable to file a timely Election Form, due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances.

**1.21.** **Objector** means an individual Class Member who properly files an objection to this Agreement.

**1.22.** **Opt-out Deadline** means on or before the Notice Response Deadline.

**1.23.** **Opt-out Statement** means the written, signed statement that an individual Class Member submits indicating the Class Member has elected to be excluded (to "opt-out") from the settlement.

**1.24.** **Preliminary Approval Order** means an Order entered by the Court, (i) granting preliminary approval to this Agreement as within the range of possible Final Approval; (ii) approving the procedures for effectuating notice to Class Members; (iii) approving the Notice and Election Form for publication; and (iv) setting dates by which Final Approval should be sought or obtained.

**1.25.** **Qualified Settlement Fund ("QSF")** means the account established and controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Qualified Settlement Fund in accordance with this Agreement and any Court order. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, and the Final Approval Order. Interest, if any, earned in the QSF will become part of the Net Settlement Fund to be distributed to the Class Members.

**1.26.** **Released Claims** means any and all causes of action, suits, claims, liens, demands, judgments, costs, damages, obligations, and all other legal responsibilities in any form or nature, including, but not limited to, all claims relating to or arising out of state, local, or federal statute, ordinance, regulation or law or any other claim at common law or in equity, whether past, present, or future, known or unknown, asserted or unasserted, arising out of or in any way allegedly related to any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the Released Parties' actions or decisions in connection with the implementation of remote or virtual learning and services due to the COVID pandemic during the 2019-2020 and 2020-2021 academic years, and to tuition paid at and/or fees paid to Ithaca in connection with the implementation of remote or virtual learning and services due to the COVID pandemic

during the 2019-2020 and 2020-2021 academic years, including all claims that were brought or could have been brought in this Action.

Released Claims includes, to the fullest extent permitted by law, waiver and relinquishment of the provisions, rights, and benefits of California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Released Claims includes, to the fullest extent permitted by law, waiver and relinquishment of any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to California Civil Code § 1542.

1.27. **Released Parties** means Defendant and all of its current, former, and future parents, predecessors, successors, affiliates, assigns, subsidiaries, divisions, or related corporate entities, and all of their respective current, future, and former employees, officers, directors, shareholders, assigns, agents, trustees, regents, administrators, executives, insurers, attorneys, and customers.

1.28. **Releasing Parties** means Named Plaintiff, those Class Members who do not timely opt-out of the Settlement Class, and all of their respective present or past heirs, executors, family members, lenders, funders, payors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, limited liability companies, partnerships and corporations.

1.29. **Service Award** means the portion of the Qualified Settlement Fund to be requested by Named Plaintiff who actively participated in the Action and approved by the Court as a reasonable award to the Named Plaintiff for representing the interests of the Settlement Class and/or actively participating in the Action.

1.30. **Settlement Claims Administrator** means, a qualified settlement administrator retained by Plaintiff but agreeable to Defendants, and approved by the Court to perform the duties set forth in this Agreement, including ILYM Group, CPT Group, AB Data, or Epiq, unless another third-party administrator is later agreed to be the Parties in writing.

1.31. **Settlement Classes, Classes, or Class Members** means all students enrolled as undergraduate or graduate students on campus during the Spring 2020 semester who did not withdraw prior to March 23, 2020, for whom any amount of tuition and fees were paid

from any source other than a scholarship or grant from Defendant to Defendant for the Spring 2020 semester, and whose tuition and fees have not been refunded in their entirety prior to this settlement. For the avoidance of any doubt, excluded from the Settlement Class are (1) students who were registered exclusively for online-only classes at the beginning of the Spring 2020 semester, (2) students who paid no tuition or fees (i.e., students who received more in scholarships or grants from Ithaca than what was charged in tuition and/or Mandatory Fees), (3) students who left, withdrew, or otherwise had completed their academic studies prior to March 23, 2020, (4) any District Judge or Magistrate Judge presiding over this Action and members of their families; (5) the Defendant, Defendant's subsidiaries, parent companies, successors, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (6) persons who properly execute and file a timely request for exclusion from the class; and (7) the legal representatives, successors or assigns of any such excluded persons.

**1.32.** **Settlement Checks** means checks issued to Class Members.

**1.33.** **Settlement Website** means the website established by the Settlement Claims Administrator to aid in administering the settlement.

**1.34.** **Spring 2020 Semester** means the Spring 2020 academic term at Ithaca, which began on approximately January 21, 2020 and ended on or before May 15, 2020.

## 2. APPROVAL AND PROCEDURE

**2.1.** **Settlement Claims Administrator.**

2.1.1. **Funding Settlement Claims Administrator.** The Settlement Claims Administrator shall be paid out of the QSF separately from Attorney's fees, costs, and expenses, and the Settlement Claims Administrator shall include an estimated amount within the Notice.

2.1.2. **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) printing and disseminating, via mail and/or e-mail, the Notice and Election Forms to the Settlement Class; (ii) performing a skip trace and resending, within one (1) day of receipt, any Notice and Election Form returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from the Parties; (iv) monitoring and maintaining a telephone number with telephone answerers until the Final Effective Date or the termination of this Agreement, whichever comes first; (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from each Class Member that the Settlement Claims Administrator receives; (vi) receiving, retaining and reviewing the Election Forms submitted by each Class Member; (vii) keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed; (viii) distributing the Settlement Checks to Class Members and/or Court-approved Costs and Fees, as

necessary; (ix) preparing, sending and/or wire-transferring Class Counsel's Attorneys' Fees and Costs; (x) mailing Service Award and Settlement Checks in accordance with this Agreement and the Final Approval Order; (xii) responding to inquiries of Class Members regarding procedures for filing objections, Opt-out Statements, and Election Forms; (xiii) referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiv) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (xv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xvi) maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Election Forms, returned mail and any and all other actual or attempted written or electronic communications with the Settlement Classes; (xvii) confirming in writing to counsel for the Parties and the Court its completion of the administration of the settlement; (xviii) timely responding to communications from the Parties and their counsel; (xix) providing all information, documents, and calculations necessary to confirm the Gross Settlement Fund to the Parties' counsel; (xx) obtaining, administering, and maintaining the Settlement Website; and (xxi) such other tasks as the Parties mutually agree.

2.1.3. **CAFA Notice**. Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), not later than ten (10) days after the Agreement is filed with the Court, the Settlement Claims Administrator shall cause to be served upon the Attorneys General of each U.S. State in which Class Members reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

2.1.4. **Weekly Reporting Requirements.** Throughout the period of claims administration, the Settlement Claims Administrator shall provide reports to the Parties upon their request regarding (i) the status of the emailing and physical mailing of the Notices and Election Forms to Class Members, (ii) the status or progress of the claims administration process, (iii) anticipated or expected distribution of the Settlement Checks, and (iv) any other aspect of the claims administration process. Beginning the second Friday after Notice is mailed to Class Members, the Settlement Claims Administrator shall provide counsel for the Parties weekly updates on the number of Class Members, Objectors, and Opt-outs.

2.1.5. **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendant's Counsel agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the settlement.

2.1.6. The Settlement Claims Administrator shall provide Class Counsel and Defendant's Counsel with drafts of all administration related documents, including but not limited to CAFA notices, follow-up class notices or communications with Class Members, telephone scripts, website postings or language or other communications with the Class Members, at least five (5) days before the Settlement Claims

Administrator is required to or intends to publish or use such communications, unless Class Counsel and Defendant's Counsel agree to waive this requirement in writing on a case by case basis.

2.1.7.  Defendant, the Released Parties, and Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Class Counsel, or the Settlement Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the QSF; (iii) the allocation of the QSF to Settlement Class Members or the implementation, administration, or interpretation thereof; (iv) the determination, administration, calculation, or payment of any claims asserted against the QSF; (v) any losses suffered by, or fluctuations in value of, the QSF; or (vi) the payment or withholding of any taxes, tax expenses, or costs incurred in connection with the taxation of the QSF or the filing of any federal, state, or local returns.

**2.2.    Preliminary Approval Motion.**

2.2.1.  Within forty-five (45) days of complete execution of this Agreement or in accordance with any orders set by the Court, Class Counsel shall file a Motion for Preliminary Approval ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice; (2) the proposed Election Form; (3) the proposed Preliminary Approval Order; (4) an executed version of this Agreement; and (5) the necessary documents, memorandum, affidavits and exhibits for the purposes of approving the settlement. The Preliminary Approval Motion also will seek the setting of a date for individuals to submit Election Forms, Opt-out Statements, and/or object to this Agreement.

2.2.2.  In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain a Final Approval Order in accordance with the Court-approved schedule, so that the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Agreement, as described herein; (3) dismiss the Action with prejudice; (4) award Costs and Fees, including any Service Award; and (5) authorize distribution and payment to the Class Members.

**2.3.    Notice and Election Forms to Class Members.**

2.3.1.  **Class List**. Within 60 days of the Preliminary Approval Order being signed by the Court, Defendant's Counsel shall provide the Settlement Claims Administrator with the Class List.

2.3.2.  **Notice.** The Notice will inform the Settlement Class about this settlement and will also advise them of their rights, including their ability to object to, opt-out of, or participate in the settlement. Additionally, the Notice will advise them of two pieces

of information: (1) their tuition totals and (2) any scholarships/grants that may potentially offset a claim or that are being used for calculation and allocation purposes.

2.3.3.  **Notice Process.** The Settlement Claims Administrator shall (1) within 14 days of receiving the Class List, email a copy of the Notice to all Class Members for whom the Settlement Claims Administrator has a valid email address, and (2) within 7 days of emailing notice as set forth above, mail a copy of the Notice and Election Form to all Class Members for whom the Settlement Claims Administrator does not have a valid email address through regular U.S. Mail to such students' last known mailing address as listed in Defendant's records. For any emails there are returned as undeliverable, are otherwise invalid, or that were unopened within 7 days of the email/mail set forth above, the Settlement Claims Administrator shall conduct physical mailing to the last known mailing address. The Parties shall agree upon any other reasonable means of Notice in consultation and based on the advice of the Settlement Claims Administrator.

2.3.4.  **Skip Trace and Remailing.** If a Notice is returned as undeliverable via email, then the Settlement Claims Administrator shall take all reasonable steps to obtain a mailing address, including performing a skip trace, and shall email the Notice to any other email address obtained or mail Notice to any physical address. If a Notice is returned as undeliverable via mail, then the Settlement Claims Administrator shall take all reasonable steps to obtain a mailing address, including requesting such information from Defendant, performing a skip trace, and/or remailing the Notice to any address. The Settlement Claims Administrator shall also mail a Notice and Election Form to any Class Member who requests them after the initial mailing of Notice and before the Notice Response Deadline. The Settlement Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notices and Election Forms returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing. All costs of locating Class Members will be paid from the QSF. To assist in obtaining a more accurate email or physical address for any Class Member, Class Counsel may provide such to the Settlement Claims Administrator to be used for the purposes of mailing of Notice.

2.3.5.  **Notice Response Deadline.** Class Members are not required to take any affirmative steps to participate in this Action and upon Final Approval settlement checks will be mailed to all Class Members by the dates set forth in this Agreement or in the Final Approval Order. However, Class Members shall be given the opportunity via the Election Form to decide upon a reasonably convenient method for them to receive their settlement proceeds among several reasonable options (i.e., mailing of checks, Venmo, PayPal, etc.). Class Members may submit their Election Forms via first class mail, fax, email, or through the Settlement Website, as defined below, by the Notice Response Deadline. The Notice Response Deadline for Election Forms shall be (i) thirty (30) days from the date of the conducted mailing/emailing or as otherwise set by the Court, and (ii) an additional fifteen (15) days later for any Class Members who were unable to file a timely Election Form due to factors such as change of address, military service, hospitalization, or other extraordinary

circumstances. If an envelope does not contain a postmark, it shall be deemed received on the date that the Settlement Claims Administrator stamps the envelope or Election Form as "received."

2.3.6.  **Settlement Website.** On the same date as initial mailing and/or e-mailing of Notices, notice shall also be provided on a website at an available settlement URL including https://www.ithacarefundlawsuit.com/, which shall be obtained, administered, and maintained by the Settlement Claims Administrator. Copies of this Settlement Agreement, the Notice, Election Form, and other pertinent documents and Court filings pertaining to the Settlement shall be provided on the Settlement Website.

## 2.4.    Opt-outs: Class Members Who Opt-out of the Settlement.

2.4.1.  Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states the Class Member is opting out of the settlement ("Opt-out Statement").  In order to be valid, the Opt-out Statement must include the name, address, and telephone number of the Class Member, and a statement indicating his or her intention to opt-out. To be effective, an Opt-out Statement must be signed by the Class Member and postmarked by the United States Postal Service or submitted via the Settlement Website on or before the Notice Response Deadline.

2.4.2.  The time period to opt-out of the settlement shall be on or before the Notice Response Deadline.

2.4.3.  The Settlement Claims Administrator shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Class Counsel and Defendant's Counsel not later than three (3) days after receipt. The Settlement Claims Administrator shall, within twenty-four (24) hours of the end of the opt-out period, send a final list of all Opt-out Statements to Class Counsel and Defendant's Counsel by both email and overnight delivery. The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities in connection with this Agreement.

2.4.4.  Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Approval Order, and will have any and all Released Claims released and dismissed with prejudice.

## 2.5.    Objectors: Class Members Who Object to the Settlement.

2.5.1.  Class Members who wish to present objections to the proposed settlement must do so in writing by the Notice Response Deadline. To be considered, such statement

must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Notice Response Deadline. The statement must include: (1) the objector's name, address and telephone number; (2) an explanation of the basis upon which the objector claims to be a Class Member; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; (5) a statement indicating whether the objector intends to appear at the Final Approval hearing (either personally or through counsel who files an appearance with the Court in accordance with the appropriate rules); (6) copies of any papers, briefs, declarations, affidavits or other documents upon which the objection is based; (7) a detailed list of any other objections submitted by the Class Member, or his/her counsel, to any class actions submitted in any state or federal court in the United States in the previous five years (or affirmatively stating that no such prior objection has been made); and (8) the objector's signature, in addition to the signature of the objector's attorney (if any) – an attorney's signature alone shall not be deemed sufficient to satisfy this requirement.  Failure to include any of the information or documentation set forth in this paragraph shall be grounds for overruling and/or striking the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice mailed to the Objector, to Class Counsel and Defendant's Counsel by email delivery no later than three (3) days after receipt of the objection.

2.5.2.  Objectors may withdraw their objections at any time. Any Class Member who has elected to opt-out may not submit objections to the settlement.

2.5.3.  To the extent that the issue raised by the Objector has not been resolved, the Objector or either Party may seek relief from the Court, including a declaration that the Objector has opted-out or that an objection has been overruled.

**2.6.     Final List of Class Members, Objectors and Opt-Outs.**

2.6.1.  No later than thirty (30) days after the Notice Response Deadline, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendant's Counsel: (a) a list of all Class Members broken down by each respective Class; (b) a list of all Objectors; (c) a list of all Class Members who timely submitted an Opt-out Statement; and (d) an estimated calculation of the settlement proceeds to Class Members in accordance with the formulas and allocation amounts discussed below.

2.6.2.  To the extent that any issues arise, they should be addressed by the Parties. If the issues cannot be resolved, they should be submitted to the Court via the application for Final Approval with designated paragraphs concerning the respective position of the Parties.

**2.7.    Final Approval Motion.**

    2.7.1.    No later than 21 days before the Fairness Hearing or in accordance with any orders set by the Court, Plaintiff shall move for Final Approval of the settlement, including dismissal of the claims with prejudice and approval of all procedures for effectuating the terms of the settlement.

    2.7.2.    Within 15 days after Final Approval Order from the Court, the Settlement Claims Administrator shall finalize calculations for allocation of the Settlement proceeds and provide a version to the Parties. To the extent any issues arise from the calculations, the Parties shall convene a meet and confer. To the extent that the Parties are unable to resolve the disputes concerning the calculations, the Parties shall submit the settlement to Hon. Suzanne H. Segal (Ret.) for final resolution of the calculations and distributions, subject to ultimate resolution by the Court.

**2.8.    Termination of Settlement.**

    2.8.1.    Subject to Paragraphs 4.1-4.3 below, Defendant or the Class Representative on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an Alternate Judgment, as defined in Paragraph 4.1(d) of this Agreement is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

    2.8.2    If any of the events specified in Paragraph 2.8.1 occur, the Parties agree to first seek assistance from the Honorable Suzanne Segal (Ret.) in an effort to salvage this Agreement and address any concerns expressed by the Court as to this Agreement before issuing a Termination Notice.

**3.    Settlement Terms**

**3.1.    Settlement Fund.** Defendant agrees to pay One Million Five Hundred Thousand Dollars ($1,500,000.00) to fully satisfy any and all current cash benefits to be paid to all Class Members, any Court-approved Costs and Fees, including but not limited to Attorneys' Fees and Costs, the Service Award for Named Plaintiff, and all costs and fees associated with the Settlement Claims Administrator.

    3.1.1.    **Funding the QSF.** Defendant shall make payments up to the total of the Gross Settlement Fund as follows: (i) on or before 14 days after the Preliminary Approval Order, Defendant shall pay $75,000 for the primary purpose of funding the Settlement Claims Administrator and paying the costs associated with effectuating

notice; (ii) an amount equal to the Attorneys' Fees and Costs and Service Award, to be paid as described below; (iii) on or before 10 days after the Final Effective Date, Defendant shall fund the remainder of the Gross Settlement Fund into the QSF.

Defendant shall make such payments into an interest-bearing QSF to be established by the Settlement Administrator under terms acceptable to all parties at a depository institution insured by the Federal Deposit Insurance Corporation. The Settlement Fund shall be deposited by Defendant into the QSF in accordance with the terms of this Agreement and the money in the QSF shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing and maintaining the QSF shall be paid from the Settlement Fund.

3.1.2. **Uncashed and Unclaimed Funds.** After 270 days have passed from the mailing of Settlement Checks and all outstanding issues are resolved, any amounts remaining in the QSF shall be distributed to Ithaca College's current-use scholarships, which are non-endowment funds that are used for student scholarships.

3.2. **Payments to Class Members and Others.** Funds shall be disbursed by the Settlement Claims Administrator as follows:

3.2.1. Within 30 days after the Final Effective Date, the Settlement Claims Administrator shall mail all Settlement Checks to Class Members or distribute funds to Class Members in accordance with method selected on their respective Election Forms.

3.2.2. The Attorneys' Fees and Costs and Service Award granted by the Court shall be paid to Class Counsel out of the QSF within ten (10) days after the Court issues the Final Approval Order that includes an award of Attorneys' Fees and Costs to Class Counsel and/or Service Award to Named Plaintiff.

3.3. **Amounts Payable as Attorneys' Fees, Costs, and Expenses.**

3.3.1. In connection with the Motion for Preliminary Approval, Class Counsel will petition the Court for an award of no more than one third (1/3) of the Gross Settlement Fund (or up to Five Hundred Thousand ($500,000.00)) for attorneys' fees and will additionally petition the Court for reimbursement of reasonable litigation costs, and expenses not expected to exceed Forty-Five thousand dollars ($45,000.00), other than costs associated with the Settlement Claims Administrator incurred in connection with the Action. Such request for Settlement Claims Administrator costs and expenses shall be separately sought from the QSF.

3.3.2. The substance of Class Counsel's application for Attorneys' Fees and Costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The outcome of any proceeding related to Class Counsel's application for Attorneys'

Fees and Costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Preliminary Approval. Defendant shall not oppose such application as long as it is consistent with the terms of this Agreement.

3.5.3    Attorneys' Fees and Costs shall be paid from the Qualified Settlement Fund.

**3.4.    Service Award for Named Plaintiff.**

3.4.1.    In return for services rendered to the Settlement Class, Named Plaintiff may apply to the Court to receive a Service Award of no more than ten thousand dollars ($10,000.00).

3.4.2.    The application for a Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Preliminary Approval. Defendant shall not oppose such application as long as it is consistent with the terms of this Agreement.

3.6.3.    Service Award for Named Plaintiff shall be paid from the Qualified Settlement Fund.

**3.5.    Conferred Benefits, Settlement Fund, and Allocation to Class Members.**

3.5.1.    **Cash and Non-Cash Benefits**. Class Members shall receive both Cash and Non-Cash Benefits.

3.5.2.    **Non-Cash Benefits.**

In addition to the Cash Benefits, Class Members shall also receive non-cash benefits in terms of (1) a one-time tuition credit of $800 per student if such student attends graduate school at Ithaca, except this benefit shall not apply to physician assistant graduate programs, and (2) a complimentary ticket to alumni weekend. To collect the one-time tuition credit, Class Members shall, as part of the financial aid process, indicate to the Student Financial Services Office that they are a Class Member and wish to use their credit towards their studies. To collect the complimentary ticket to alumni weekend, Class Members shall contact the Advancement Office during the registration process to request a complimentary ticket. The Non-Cash Benefits shall be available to students for two (2) calendar years after the Final Effective Date.

3.5.3.    **Cash Benefits.**

3.5.3.1.    **Allocation.** The Settlement Claims Administrator shall prepare calculations to be approved by the Parties, and the Net Settlement Fund shall be distributed proportionately to all Class Members based on the following terms and criteria,

after allocations for Attorneys' Fees and Costs, Service Award, and the costs of the Settlement Claims Administrator:

I.    Enrolled students who registered for online-only classes at the beginning of the Spring 2020 Semester, who paid no tuition or fees because of Ithaca-backed scholarships/grants, or who left Ithaca prior to March 23, 2020, are not eligible to collect any proceeds – as they are not Class Members by definition.

II.   The Net Settlement Fund shall be allocated to Class Members on a prorated basis based on a percentage of tuition and fees paid to Ithaca during the Spring 2020 Semester. Specifically, enrolled students shall receive a proportionate and prorated distribution of proceeds based on the amount of tuition and fees they paid for the Spring 2020 semester, taking into account any Ithaca-funded amounts that did not require repayment and any unpaid balances owed to Ithaca. The Parties shall endeavor to ensure that minimum payments are made to Class Members such that it is administratively reasonable. For example, an administratively reasonably floor may be $10 or $15 such that no Class Member receives less than that amount.

3.5.4.  **Disputes.** The Parties shall endeavor to resolve calculation issues with the assistance and recommendations of the Settlement Claims Administrator such that the allocations fairly and justly account for the nature of the claims, the nature of the resolution, the efficiency of resolving this expeditiously, and the overall reasonableness and fairness of the proposed Settlement. To the extent that the Parties have any disputes about calculations, allocations, Non-Cash Benefits, challenges, disputes, or other issues related to Cash or Non-Cash Benefits, including de minimis payments, Hon. Suzanne H. Segal (Ret.) shall have authority to make an efficient determination, subject to the ultimate discretion of the Court.

**3.6.    Release of Claims.**

3.6.1.  Upon the Final Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.

3.6.2.  Upon the Final Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to California Civil Code § 1542. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any unknown claims they may have.

3.6.3. Except as provided in this Agreement, upon payment of all Costs and Fees as approved by the Court, Class Counsel, on behalf of the Class Members, irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she, or they may have against the Released Parties for attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation of the Class. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation in the Action.

**3.7.** **Non-Admission of Liability.** By entering this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Named Plaintiff and/or the Class Members, individually or collectively, and all such liability is expressly denied. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to fully and finally resolve and settle all disputes with the Named Plaintiff and Class Members. Settlement of the Action, negotiation and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all complaints or other papers filed by Plaintiff in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

## 4. CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.

**4.1.** The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

I.    The Parties and their counsel have executed this Agreement;

II.    The Court has entered the Preliminary Approval Order;

III.   The Court has entered a Final Approval Order following Notice to the Settlement Class and a Final Approval Hearing, and has entered the Final Judgment, or a judgment consistent with this Agreement in all material respects; and

IV.   The Final Judgment has become Final, as defined above, or, in the event that the Court enters an Alternate Judgment, such Alternate Judgment becomes Final.

4.2.   If some or all of the conditions specified in Paragraph 4.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 2.8 unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Settling Parties. Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel and/or the incentive award set forth in Paragraphs 3.3 and 3.4 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

4.3.   If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 2.8 or 4.1-4.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the status quo ante with respect to the Action as if this Agreement had never been entered into.  Within five (5) business days after written notification of termination as provided in this Agreement is sent to the other Parties, the Settlement Fund (including accrued interest thereon), less any Settlement Administration costs actually incurred, paid or payable and less any taxes and tax expenses paid, due or owing, shall be refunded by the Settlement Administrator to Defendant, based upon written instructions provided by Defendant's Counsel. In the event Defendant terminates this Agreements because of Plaintiffs or Class Counsel breach of this Agreement, Class Counsel shall refund to Defendant, based upon written instructions provided by Defendant's Counsel, any Settlement Administration costs actually incurred prior to termination. In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, Class Counsel shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to Class Counsel from the Settlement Fund. In the event the attorney fees and costs awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, Class Counsel shall within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the attorneys' fees and costs paid to Class Counsel and/or Class Representative from the Settlement Fund, in the amount vacated or modified.

5.  **INTERPRETATION AND ENFORCEMENT**

5.1.    **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2.    **No Assignment.** Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

5.3.    **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4.    **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of Named Plaintiff and all Class Members in the Action, this Agreement is binding.

5.5.    **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6.    **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7.    **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice-of-law principles.

5.8.    **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties may not unilaterally petition the Court to modify this Agreement or to increase the Defendant's payment obligations, except to the extent provided in this Agreement.

5.9.    **Waivers, Modifications, and Amendments to Be in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after

the Court's approval of this Agreement, shall be valid or binding unless in writing and signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.10.** **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.11.** **Facsimile, Email and Electronic Signatures.** Any Party may execute this Agreement by electronic signature and/or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

**5.12.** **Enforcement Actions.** In the event that one or more of the Parties to this Agreement institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorney's fees and costs incurred in connection with any enforcement actions.

**5.13.** **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**WE AGREE TO THESE TERMS,**

FOR DEFENDANT:

**Ithaca College**

_____

**Dr. La Jerne Terry Cornish
President**

**Date: December 11, 2024**

FOR PLAINTIFFS AND THE
CLASS:

_____

**Erik Akerman**

**Date:** 12/13/2024